**Electronically Filed**
**Intermediate Court of Appeals**
**30295**
**29-APR-2011**
**08:19 AM**

NO. 30295

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
MILES D. JENKINS, JR., Defendant-Appellant.


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTC-09-036612)

MEMORANDUM OPINION
(By: Nakamura, C.J., and Foley and Reifurth, JJ.)

Defendant-Appellant Miles D. Jenkins, Jr., (Jenkins) appeals from the "Notice of Entry of Judgment and/or Order and Plea/Judgment" (Judgment) filed on December 15, 2009, in the District Court of the First Circuit (District Court)[1]. Jenkins was charged with excessive speeding for driving his vehicle at a speed exceeding the applicable speed limit by at least thirty miles per hour, in violation of HRS § 291C-105(a)(1) (2007).[2]

---

[1] The Honorable Leslie A. Hayashi presided.

[2] HRS § 291C-105 (2007 & Supp. 2010) provides in relevant part:

    (a)    No person shall drive a motor vehicle at a speed exceeding:

        (1)    The applicable state or county speed limit by thirty miles per hour or more; . . .

    . . .

    (b)    For the purposes of this section, "the applicable state or county speed limit" means:

(continued...)

At trial, Honolulu Police Department Officer Russel Maeshiro (Officer Maeshiro) testified that using an "LTI 20/20 UltraLyte handheld laser speed detection unit" (laser gun), Officer Maeshiro determined that Jenkins was driving Jenkins's vehicle 75 miles per hour in a 35-mile-per-hour zone.  Officer Maeshiro testified that he was positioned on the H-1 Freeway on the right shoulder just prior to the Middle Street tunnel when he aimed the laser gun at Jenkins's vehicle, which was traveling eastbound.  The District Court found Jenkins guilty as charged of excessive speeding.

On appeal, Jenkins contends that: (1) the excessive speeding charge was defective for failure to allege a state of mind; (2) Officer Maeshiro's testimony about the contents of the laser gun manual violated the "best evidence rule," Hawaii Rules of Evidence (HRE) Rule 1002 (1993); (3) an insufficient foundation was laid for the admission of the laser gun's speed reading; and (4) there was insufficient evidence to support his conviction.  We affirm the District Court's Judgment.

I.

A.

Jenkins was orally charged as follows:

Mr. Jenkins, on or about April 29, 2009, in the City and County of Honolulu, [S]tate of Hawaii, you did drive a motor vehicle at a speed exceeding the applicable State of Hawaii or County speed limit by 30 miles per hour or more thereby committing the offense of Excessive Speeding in violation of Section 291C-105 of the Hawaii Revised Statutes.

Jenkins argues that the charge was defective because it failed to allege a state of mind, namely, that he committed the offense intentionally, knowingly, or recklessly.  We disagree.

---

2/ (...continued)
(1)    The maximum speed limit established by county ordinance; [or]

(2)    The maximum speed limit established by official signs placed by the director of transportation on highways under the director's jurisdiction[.]

> It is well settled that an accusation must
> sufficiently allege all of the essential elements of the
> offense charged, a requirement that obtains whether an
> accusation is in the nature of an oral charge, information,
> indictment, or complaint.  Put differently, the sufficiency
> of the charging instrument is measured, *inter alia*, by
> whether it contains the elements of the offense intended to
> be charged, and sufficiently apprises the defendant of what
> he or she must be prepared to meet.  A charge defective in
> this regard amounts to a failure to state an offense, and a
> conviction based upon it cannot be sustained, for that would
> constitute a denial of due process.

State v. Wheeler, 121 Hawai'i 383, 391, 219 P.3d 1170, 1178
(2009) (internal quotation marks, brackets, citations, and
footnote omitted).

Jenkins failed to object to the sufficiency of the
excessive speeding charge in the District Court.  We therefore
apply the liberal construction rule in evaluating the sufficiency
of his charge.  Under this rule, the charge is presumed valid and
will not be found to be insufficient "unless the defendant can
show prejudice or that the [charge] cannot within reason be
construed to charge a crime."  Id. at 399-400, 219 P.3d at
1186-87 (internal quotation marks and citation omitted).

Jenkins does not contend that he was prejudiced by the
failure to allege a state of mind in the excessive speeding
charge.  Thus, we focus our examination on whether Jenkins can
show that the charge cannot within reason be construed to charge
a crime.

### B.

The essential elements of an offense are "(1) conduct,
(2) attendant circumstances, and (3) results of conduct, as . . .
specified by the definition of the offense[.]"  HRS § 702-205
(1993); State v. Mita, 124 Hawai'i 385, 391, 245 P.3d 458, 464
(2010).  The state of mind is not included as an element of an
offense, State v. Klinge, 92 Hawai'i 577, 584 n.3, 994 P.2d 509,
516 n.3 (2000); State v. Aganon, 97 Hawai'i 299, 303, 36 P.3d
1269, 1273 (2001), but nonetheless must be proved.  See HRS
§ 701-114 (1993); HRS § 702-204 (1993).

HRS § 291C-105, the statute defining the excessive speeding offense, does not specify a required state of mind. See footnote 2, supra. Where the offense does not specify a state of mind, "the default states of mind of 'intentionally,' 'knowingly,' or 'recklessly,' [are] required as to each element of the statute." State v. Bayly, 118 Hawaiʻi 1, 10, 185 P.3d 186, 195 (2008); see HRS § 702-204.[3]

C.

Generally, a charge is sufficient if it tracks the language of the statute proscribing the offense. See State v. Silva, 67 Haw. 581, 585, 698 P.2d 293, 296 (1985); State v. Cordeiro, 99 Hawaiʻi 390, 406, 56 P.3d 692, 708 (2002). Here, the oral charge tracked the language of the statute. Moreover, an indictment need not allege that the crime was committed intentionally, knowingly, or recklessly, "except where such characterization is used in the statutory definition of the offense." HRS § 806-28 (1993);[4] see State v. Torres, 66 Haw. 281, 285, 660 P.2d 522, 525 (1983).

In Torres, the Hawaiʻi Supreme Court considered whether a count of an indictment, drawn in the language of the statute, that charged the defendant with incest was insufficient for failure to allege the mental state necessary to establish the offense. Torres, 66 Haw. at 289, 660 P.2d at 527. The court concluded that the incest charge was sufficient, reasoning as follows:

---

[3] HRS § 702-212 (1993) provides that the default states of mind do not apply to "[a] crime defined by statute other than [the Hawaii Penal Code], insofar as a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears." HRS § 291C-105 is not part of the Hawaii Penal Code. However, Plaintiff-Appellee State of Hawaiʻi does not argue that HRS § 291C-105 is a strict liability offense.

[4] HRS § 806-28 provides in relevant part:

The indictment need not allege that the offense was committed or the act done "feloniously", "unlawfully", "wilfully", "knowingly", "maliciously", "with force and arms", or otherwise except where such characterization is used in the statutory definition of the offense.

4

> Our conclusion that the crime was unmistakably defined despite the lack of an explicit averment of the mental state accompanying the prohibited act rests on the nature of the offense charged and the earlier conclusion that it is not a crime that can be accidentally or innocently committed. In some situations knowledge or intent "need not be alleged in terms, and a pleading is good if it fairly imports knowledge or intent." United States v. Arteaga-Limones, 529 F.2d 1183, 1199 (5th Cir.1976); 1 C. Wright, Federal Practice & Procedure § 125, at 377-78 (1982). Incest as charged here is an offense where intent can be inferred because "sexual intercourse" under the circumstances alleged could only be a wilful act.

Id.

In State v. Kane, 3 Haw. App. 450, 652 P.2d 642 (1982), Kane was charged with carrying on his person a pistol or revolver without a permit or license, in violation of HRS § 134-9 (Supp. 1980). Id. at 451, 652 P.2d at 644. The statute defining the offense did not specify a mental state, and the indictment charging Kane did not allege that he acted with any mens rea in committing the crime. Id. at 451-53, 652 P.2d at 644-45. This court held that the indictment was sufficient, concluding that "the allegation in the indictment that Kane 'did carry on his person a pistol or revolver without a permit or license to carry a firearm' was sufficient to imply that Kane did so 'intentionally, knowingly, or recklessly.'" Id. at 457, 652 P.2d at 648.[5]

D.

Here the excessive speeding charge against Jenkins tracked the language of the statute proscribing the offense, and the statute did not specify a required mental state. In addition, the charge against Jenkins alleged that he drove his vehicle 30 miles per hour or more over the applicable speed limit. As in Torres and Kane, a reckless state of mind can be inferred from the conduct alleged in the charge. Accordingly, we conclude that the failure to expressly allege that Jenkins acted

---

[5] In State v. McDowell, 66 Haw. 650, 651, 672 P.2d 554, 555 (1983), the Hawaiʻi Supreme Court adopted this court's analysis in Kane.

5

with a reckless state of mind did not render the charge deficient.

II.

Jenkins contends that the District Court erred in: (1) permitting Officer Maeshiro's testimony about the contents of the laser gun manual because such testimony violated the best evidence rule; and (2) admitting evidence of the laser gun's speed reading because an insufficient foundation had been laid for such evidence. We conclude that Jenkins has failed to establish that he is entitled to relief on these claims.

A.

Officer Maeshiro testified that the laser gun he used to determine Jenkins' speed was a "LTI 20/20 UltraLyte"; that he was trained in the operation and was qualified to operate the laser gun; that this training included classroom and practical instruction on an earlier version of the laser gun, the LTI 20/20 Marksman, and updated training on the LTI 20/20 UltraLyte; that his training was based on the manual for the laser gun that had a Laser Technologies, Inc. "copyright phrase on it" and was marked "LTI or Laser Technologies, Inc.," which he "guess[ed was] the company that made the unit"; and that his training was based on the manufacturer's specifications as designated in the LTI manual. Over hearsay objections, Officer Maeshiro was permitted to testify that the manual described how to test the laser gun and that he was trained to test the laser gun in accordance with the testing methods designated in the manual. According to Officer Maeshiro, he performed the tests he was trained to perform on the laser gun; the tests were done correctly and in accordance with the manufacturer's specifications; and the tests showed that the laser gun was operating properly.

Officer Maeshiro testified that he noticed Jenkins's vehicle "definitely traveling above the posted speed limit," aimed the laser gun at Jenkins's car, and obtained a speed reading of 75 miles per hour from the laser gun. A few questions later, Jenkins objected to the testimony about the speed reading

for lack of foundation, and the District Court overruled the objection.

### B.

Jenkins contends that the District Court erred in permitting Officer Maeshiro to testify about the contents of the laser gun manual. Jenkins claims that this testimony violated the best evidence rule set forth in HRE Rule 1002[6] because the State was required to introduce the manual -- the best evidence of the manual's contents. Jenkins, however, did not object to Officer Maeshiro's testimony regarding the contents of the manual on the ground of the best evidence rule in the District Court, but rather objected on the ground of hearsay. Jenkins thus waived any objection on the ground of the best evidence rule. See HRE Rule 103 (1993 & Supp. 2010) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection . . . "); State v. Matias, 57 Haw. 96, 100-01, 550 P.2d 900, 903-04 (1976) ("[T]he making of an objection upon a specific ground is a waiver of all other objections." (internal quotation marks and citation omitted)).

Jenkins's failure to raise a best-evidence-rule objection deprived the District Court of the opportunity to rule on the issue. Jenkins's failure to raise this objection also deprived Plaintiff-Appellee State of Hawai'i (State) of the opportunity to cure any alleged error by seeking to admit the manual in evidence.[7]

---

[6] HRE Rule 1002 provides: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute."

[7] Jenkins states that allowing Officer Maeshiro to testify about the contents of the manual "also allowed the Court to consider inadmissible hearsay." However, aside from this conclusory assertion, Jenkins offers no argument on why Officer Maeshiro's testimony about the contents of the manual constitutes hearsay. Jenkins thus waived this argument and we need not

(continued...)

7

C.

Jenkins argues that an insufficient foundation was laid for the admission of the laser gun's speed reading. Aside from his best-evidence-rule claim, Jenkins does not raise any specific argument on appeal that Officer Maeshiro's testimony was improperly admitted. See footnote 7, supra. Instead, Jenkins argues that Officer Maeshiro's testimony was insufficient to establish the requisite foundation. Because we have rejected Jenkins's best-evidence-rule claim, we consider all of Officer Maeshiro's testimony in deciding whether a sufficient foundation was laid for the admission of the laser gun's speed reading.

In State v. Assaye, 121 Hawaiʻi 204, 216 P.3d 1227 (2009), the Hawaiʻi Supreme Court articulated the test for establishing a sufficient foundation for admission of a laser gun's speed reading. The court held that the State is required to show that the officer using the gun tested it according to the manufacturer's recommended procedures and that the officer's training in the operation of the gun meets the requirements indicated by the manufacturer. Id. at 215, 216 P.3d at 1238.

Officer Maeshiro's testimony showed that the laser gun he used to determine Jenkins's speed was a "LTI 20/20 UltraLyte"; that he had been trained to operate and was qualified to operate the laser gun based on the laser gun's manual that was marked "LTI or Laser Technologies, Inc." and also copyrighted by Laser Technologies, Inc.; that he tested the laser gun in accordance with the manufacturer's specifications set forth in the manual; and that the tests showed that laser gun was operating properly. We conclude that the foundation laid by Officer Maeshiro's testimony was sufficient to support the admission of the laser

---

[7] (...continued) address it. See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7) (2006) ("Points not argued may be deemed waived."). In any event, Officer Maeshiro's testimony about the contents of the manual was not offered to prove the truth of the matters asserted in the manual, but only to show that he followed the directions set forth in the manual in testing the laser gun. Officer Maeshiro's testimony for this purpose was not hearsay.

gun's speed reading. Accordingly, Jenkins has failed to demonstrate that the District Court's admission of the laser gun's speed reading constitutes error.

III.

Jenkins argues that there was insufficient evidence to support his conviction because the State failed to prove: (1) whether the offense occurred on a state or county highway; (2) that the speed limit signs were "official" signs posted by the Director of Transportation on highways under the Director's jurisdiction; (3) the margin of error for the laser gun; and (4) that he acted with a reckless state of mind. We reject Jenkins's arguments.

A.

Jenkins did not object to the District Court's taking judicial notice of the "speed schedule" proffered by the State.[8] The "speed schedule" is certified by the State Director of Transportation as a "true and correct document listing of posted speeds on our State highways." Referring to the "speed schedule," Officer Maeshiro identified the "area in question" regarding this case as the "H-1 freeway in the vicinity of the Middle Street overpass specifically by mile marker post 18.48 and 18.72, in that general area, Koko Head bound," which according to the "speed schedule" has a speed limit of 35 mile per hour. Officer Maeshiro also testified, without objection, that Jenkins had to pass three posted speed-limit signs which indicated that the speed limit was 35 miles per hour, before reaching Officer Maeshiro's position; that the signs were clear and unobstructed; and that the signs were "official City and County of Honolulu, [S]tate of Hawai'i, traffic control signs."

When viewed in the light most favorable to the State, State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981), we conclude that the State adduced sufficient evidence to prove that

_____

[8] We also take judicial notice of the "speed schedule," a document entitled "Oahu Speed Limit Inventory State Highways April 2008" and maintained at the District Court.

Jenkins's offense occurred on a State-controlled highway (the H-1 Freeway) and that the maximum applicable speed limit had been established by "official" signs placed by the Director of Transportation on highways under the Director's jurisdiction. See State v. Vallejo, 9 Haw. App. 73, 80-83, 823 P.2d 154, 158-60 (1992) (concluding that a police officer could give a lay opinion that a speed limit sign was "official" and that the presumption of HRS § 291C-31(c) could be used to established that the sign was placed under lawful authority).

B.

The laser gun's speed reading of 75 miles per hour was 40 miles per hour over the applicable speed limit and 10 miles per hour over the speed necessary to establish the excessive speeding charge against Jenkins. No issue or evidence was presented at trial regarding any margin of error regarding the laser gun's speed reading, and Jenkins did not argue to the District Court that the evidence was insufficient due to the failure to prove a margin of error. Jenkins also has not cited any authority suggesting that the margin of error for the laser gun used in this case approaches anywhere near ten miles per hour.

We conclude that under the circumstances of this case, the State was not required to establish a margin of error for the laser gun in order to present sufficient evidence that Jenkins exceeded the applicable speed limit by 30 miles per hour or more. The evidence of the laser gun's speed reading was sufficient to prove this element of the excessive speeding charge.

This court's decision in State v. Dibenedetto, 80 Hawai'i 138, 906 P.2d 624 (Hawai'i App. 1995), which Jenkins's relies upon in support of his argument, is distinguishable. In Dibenedetto, evidence was introduced at trial that the margin of error for an intoxilyzer's blood alcohol content (BAC) reading was .01%, in a case where the intoxilyzer's BAC reading was

10

.11%[2/] and the threshold for the offense of driving under the influence of an intoxicant was a BAC of .10%. Id. at 140-43, 906 P.2d at 627-29. This court held that in order to prove the offense beyond a reasonable doubt, the prosecution was required to establish that the intoxilyxer's BAC reading when taken together with the intoxilyzer's margin of error equaled or exceeded the statutory threshold. Id. at 146, 906 P.2d at 632.

We do not read Dibenedetto as imposing a blanket rule requiring the prosecution to introduce evidence of a measuring device's margin of error in every case where such a device is used to establish a statutory threshold. Rather, Dibenedetto provides that where evidence is presented at trial that a measuring device used to establish a statutory threshold has a specified margin of error, the prosecution is required to prove that the reading produced by the measuring device minus the margin of error equals or exceeds the statutory threshold.

C.

There was sufficient evidence to show that Jenkins acted with a reckless state of mind in committing the excessive speeding offense. The evidence showed that Jenkins was driving his vehicle 40 miles per hour over the posted speed limit and 10 miles per hour more than the speed necessary to establish the excessive speeding offense. Contrary to Jenkins's claim, there was evidence that the signs he passed, which warned him of the 35-miles-per-hour speed limit, were clear and unobstructed. We also disagree with Jenkins's contention that he did not have sufficient time from when he passed the first 35 miles-per-hour-speed-limit sign to when Officer Maeshiro obtained the laser gun's speed reading to conform his conduct to the requirements of the criminal law. We conclude that the State introduced

---

[2/] The actual intoxilyzer BAC reading introduced at trial was .113%, but the majority held that the thousandth-place digit (.003%) should have been redacted because it was irrelevant given the margin of error. Dibenedetto, 80 Hawai'i at 145, 906 P.2d at 631.

substantial evidence establishing that Jenkins acted with a reckless state of mind.

IV.

We affirm the December 15, 2009, Judgment of the District Court.

DATED: Honolulu, Hawaiʻi, April 29, 2011.

Timothy I. MacMaster
for Defendant-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

12